WARD, Judge.
Danny W. Evans was convicted of second degree murder and sentenced to life imprisonment at hard labor without the benefit of parole, probation or suspension of sentence. Evans appeals, arguing that the Trial Court erred in: 1) refusing to grant a mistrial because inadmissible evidence of other crimes was solicited by the state during the testimony of a state witness and 2) not allowing the defense to question Assistant District Attorney Jim Williams about the number of “jailhouse confessions” used by his office. We affirm.
The record shows that on the evening of the murder, May 4, 1984, Evans telephoned Robert Magee, a resident of Crosby, Texas. Evans stated that “he was fixing to go turn a trick and that he was going to rob the man.” He also told Magee that he intended to steal the man’s car go to Houston the next day.
After his telephone conversation with Magee, Evans visited the victim at his home, at approximately 7:15 p.m. Hubert Villemarette, a friend of the victim, was also present but departed at about 8:00 p.m., leaving the victim and Evans alone in the apartment. At 10:00 p.m. Villemarette called the apartment and spoke with Evans. His subsequent calls went unanswered.
On May 6, 1984 the victim’s decomposed body was found at his residence. An autopsy on May 7, 1984 revealed that the murder weapon was a sharp instrument and that the victim was killed forty to forty-eight hours prior to the autopsy. The victim’s car, video cassette recorder and radio were missing from his home. The vehicle was later found in Houston with the victim’s credit cards and receipts from these accounts, signed by Evans, in the glove compartment.
John Langston testified that while he was Evans’ cell-mate in the Orleans Parish House of Detention, Evans admitted to him that he cut the victim’s throat, “took some of his belongings and took his car and went to Texas.”
In his first assignment of error Evans contends that a mistrial should have been granted because the prosecutor placed before the jury Evans’ criminal record or alternatively because a state witness, Robert Magee, referred to another crime committed by Evans. Specifically, when the prosecutor asked what Evans did for a living, Magee replied that Evans is a “male hustler prostitute.” Counsel for Evans objected and later moved for a mistrial. The Trial Judge denied the motion and admonished the jury to disregard Magee’s testimony.
The applicable article is C.Cr.P. Art. 771.
In the following eases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the re *399 mark or comment is within the scope of article 770.
In such cases on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Under this statute an order of mistrial was not required, but it was unquestionably within the discretion of the Trial Judge to order a mistrial if he was not satisfied that his admonition was sufficient. Solicited and responsive remarks made by a witness in response to the prosecutor’s questions may require reversal of a conviction. State v. Perry, 420 So.2d 139 (La.1982). However, a mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to the defendant which effectively deprives him of a fair trial. C.Cr.P. art. 921; State v. Edwards, 420 So.2d 663 (La.1982); State v. Payne, 482 So.2d 178 (La.App. 4th Cir.), writ denied, 487 So.2d 436 (La.1986).
In the present case Magee’s answer only corroborated prior testimony that Evans was in fact a male prostitute. The testimony elicited was merely cumulative— hence even if it was inadmissable, it did not require a mistrial and any prejudice resulting from Magee’s remark was cured by the Trial Judge’s admonition to the jury.
Evans argues that he should be granted a mistrial under La.C.Cr.P. art. 770(2), which requires a mistrial when the Judge, District Attorney or a court official during trial or in argument refers to another crime committed or alleged to have been committed by the defendant. Because a state witness is not a court official, State v. Manuel, 408 So.3d 1235 (La.1982), Article 770 is inapplicable. Even so, Evans argues that it was the District Attorney who effectively placed before the jury Evans’ criminal record when he solicited Magee’s testimony as to Evans’ occupation as a prostitute. In support of his argument Evans relies on State v. Arnaud, 448 So.2d 253 (La.App. 1st Cir.1984), where the prosecutor asked a state witness if she knew of the defendant’s criminal record. In the present case, however, the prosecutor did not ask Magee if he was aware that Evans was a male prostitute. Instead Magee was asked if he knew what Evans did for a living. Thus the prosecutor’s question neither implied that Evans had a criminal record, presuming it as a fact as in Ar-naud, nor did it place before the jury the fact that Evans had a criminal record. Nor did the question specifically require a response concerning Evans’ criminal occupation, as he might also have been employed in legal pursuits. Moreover, although Ma-gee referred in general terms to other criminal activity of Evans, there was no reference to dates or places of other crimes, or a reference to any conviction. We therefore believe the Trial Judge did not err when he refused to grant a mistrial but admonished the jury instead.
In his second assignment Evans contends that the Trial Court erred in not allowing the defense to impeach the credibility of Evans’ cell mate Langston by questioning Assistant District Attorney Jim Williams about the number of “jailhouse confessions,” such as that made by Evans to Langston, used by the District Attorney’s Office. The Trial Judge ruled that the number of “jailhouse confessions” used by the District Attorney’s office was not relevant evidence.
Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. R.S. 15:441. The Trial Court’s ruling as to the relevancy of the evidence is entitled to great deference and should only be disturbed upon a showing of clear abuse of discretion. State v. Whittaker, 463 So.2d 1270 (La.1985).
Defense counsel’s attempted questioning of Williams concerning the number of “jailhouse confessions” used by the District Attorney’s Office would not have elicited testimony relevant to prove any material issues at trial, and, although by using great imagination, Williams’ testimony could conceivably have been used to impeach Langston, it would have been only *400 remotely connected and unlikely to affect the jury’s decision on Langston’s credibility. Therefore, the Trial Judge did not abuse his discretion in disallowing the questioning, and this assignment is without merit.
For these reasons defendant’s conviction and sentence are affirmed.
AFFIRMED.