369 So.2d 1303 (1979)
STATE of Louisiana
v.
James Michael DUPRE.
No. 63186.
Supreme Court of Louisiana.
April 9, 1979.
*1304 Alton T. Moran, Allen J. Bergeron, Jr., Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
During the early evening of March 25, 1976, James Michael Dupre and Richard Durr accosted a woman as she was getting into her car in the parking lot of the Bon Marche shopping center in Baton Rouge. Holding their victim at gunpoint, they drove in her car to Livingston Parish and began to drive through the countryside in search of the "C.C.," a deserted country road. Once there, Dupre raped the victim in the back seat of her car. After a trip to Hammond to buy gasoline and to drop off Dupre, Durr and the victim returned to the "C.C." where she was raped again. Durr then released the victim and she drove back to Baton Rouge.
Five days later, Durr and Dupre were hitchhiking in the rain near Bon Marche and attracted the attention of two teenage girls who were leaving the center. Although the men stated that Hammond was their destination, the girls offered to take them no farther than the interchange of Interstate 12 and Sherwood Forest Boulevard. When they arrived there, Durr and Dupre suddenly displayed weapons and demanded that the girls drive onto the Interstate. On the ruse of turning around to follow this order, the driver pulled into the parking lot of a convenience store and the girls began to struggle with their abductors. The scuffling attracted the attention of a police officer who blocked Durr's attempts to drive back onto the highway after he had seized the wheel from the driver. The two men then fled on foot across a nearby field and managed to elude the police that evening.
A composite sketch drawn from the first victim's description of her assailants led to the arrest of Durr in Albany, Louisiana and to the arrest of Dupre in Metairie on April 6, 1976. Both men were indicted by the grand jury of East Baton Rouge Parish on two counts of aggravated kidnapping, R.S. 14:44. Dupre was subsequently held mentally incompetent to proceed and was committed for evaluation to the East Louisiana State Hospital in Jackson. After a later determination that he had regained the capacity to proceed to trial, Dupre entered pleas of not guilty and not guilty by reason of insanity. Tried alone, he was convicted as charged on both counts on September 28, 1977, and was subsequently sentenced to consecutive terms of life imprisonment. He now appeals his conviction and sentence, urging eight of the twelve assignments of error filed in the district court.

*1305 Assignments of Error Nos. 2, 3, 7
By these assignments of error the defense contends that the trial judge erred in admitting evidence of other crimes. These assignments were taken when the court overruled defense objections to references made by the state to the aggravated rape of the first victim.[1] In brief the defense asserts that the trial court's rulings were erroneous under the standards announced in State v. Prieur, 277 So.2d 126 (La. 1973), which are interpreted by the defense to permit only evidence of convictions to be introduced.
The defense reliance on Prieur and subsequent interpretations of its standards is misplaced. Prieur supplied guidelines for the introduction of evidence of other crimes to establish knowledge, intent, or system; it did not hold that only evidence of convictions is admissible. Moreover, the decision expressly recognized that other crimes which form part of the res gestae of the charged offense constitute an exception to the rule that other crimes evidence is generally inadmissible. State v. Prieur, supra; see State v. Schwartz, 354 So.2d 1332 (La. 1978). Here the rape was inseparably intertwined with the first kidnapping and tended to explain the movement of the abductors and their victim.
Evidence of the rape was also admissible to prove an essential element of the charged offenses. R.S. 14:44 defines aggravated kidnapping in part as "the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control." The state's theory of the case was that the sexual act performed by the first victim constituted the relinquishment of something of value within the meaning of the statute.[2] As such, evidence of the rape was an inextricable part of the state's proof of the charged offenses. Relevant evidence necessary to establish elements of the crime charged is not rendered inadmissible merely because the evidence involves the commission of another crime. State v. Anderson, 343 So.2d 135 (La.1977); State v. Bell, 315 So.2d 31 (La.1975).
These assignments of error lack merit.

Assignment of Error No. 10
In this assignment of error, the defense argues that the trial judge committed reversible error during the charging of the jury when he inadvertently stated that the defendant was on trial for aggravated rape. Although the defense argues that this slip of the tongue severely prejudiced Dupre, the record demonstrates that the judge eliminated any possible prejudice by immediately correcting himself and by correctly charging the jury on the applicable law.
This assignment is without merit.

Assignment of Error No. 8
In this assignment the defense contends that the trial court was in error to deny a motion for mistrial. The assignment was taken because of reference made, during cross-examination of a psychiatrist testifying for the defense, to charges pending against the defendant for aggravated rape:
"Q Okay, now, this is the information, all the history on him you received from him, not from another source?
A That's correct.
Q So you don't have any independent way of knowing whether or not he told you the truth or not?
A No, I don't have.

*1306 Q And you base your opinion upon what this man who's charged with aggravated rape and aggravated kidnapping told you himself?
A Yes."
The defense did not object to this last question until two pages later in the transcript.
Although the credibility of a witness may be impeached only by evidence of conviction of crime, and not by arrests, indictments, or prosecutions, R.S. 15:495; State v. Hatch, 305 So.2d 497 (La.1974), evidence of arrests or pending charges is admissible if it has relevance independent of its impeachment value. State v. Ledet, 345 So.2d 474 (La. 1977); State v. Robinson, 337 So.2d 1168 (La.1976). In the instant case the aggravated rape mentioned by the prosecution was part of the same occurrence for which the defendant was charged. Dr. Steele testified that Dupre was a chronic undifferentiated schizophrenic and based this opinion in part on the defendant's confused account of the incidents in question and his apparent lack of motive for committing the crimes. However, the doctor admitted that the only information he relied on was supplied to him by the defendant. The prosecution was certainly entitled to emphasize to the jury the limited basis of Dr. Steele's opinion and to question the expert to determine whether his opinion of Dupre's condition would be changed if he was aware of the defendant's more coherent statements to the police and of his purpose in abducting his victims. Therefore, reference to the aggravated rape was relevant to test the opinion of the defense's expert witness.
This assignment of error lacks merit.

Assignment of Error No. 5
By this assignment of error, the defense contends that the trial court erred in admitting in evidence an oral inculpatory statement made by the defendant to the Baton Rouge police on April 6, 1976. The defense argues that the statement was inadmissible because it was made while the defendant was under duress.
Deputy Kearney Foster of the Livingston Parish sheriff's office arrested the defendant at his mother's house in Metairie at approximately 1:50 a. m. on April 6, 1976. The defendant was initially taken to the Jefferson Parish sheriff's office where he made a brief statement. Foster then went with Dupre to his mother's house where the defendant surrendered the gun used in the abductions. They then drove to Livingston Parish where the defendant again confessed at 5:00 a. m. A transcription of the recorded confession was signed by the defendant. At 1:30 that afternoon the defendant was interviewed in Livingston Parish by Sergeant Julius O'Brien of the Baton Rouge police and made an oral statement which was subsequently tape recorded.
The defense takes the position that the statement made to Sergeant O'Brien was a result of the defendant's fatigue which was caused by the prolonged interrogation conducted by the Livingston Parish authorities between 1:50 and 5:00 a. m. However, although the prosecution laid a predicate for the introduction of the statement, the record reveals that only the earlier statement made to Deputy Kearney Foster was introduced at trial. Therefore, any possible infirmities in the statement given to Officer O'Brien are irrelevant to this prosecution. With respect to the statement introduced at trial, we note that the state adequately carried its burden of showing the statement's voluntary nature, R.S. 15:451; C.Cr.P. 703, and that it was made after the defendant was informed on his Miranda rights. State v. Adams, 347 So.2d 195 (La. 1977).
This assignment has no merit.

Assignment of Error No. 11
By this assignment of error the defendant contends that the trial judge erroneously charged the jury concerning the defense of insanity. The defense did not offer special instructions at trial and in brief does not specify its objections to the charge.
The record reveals that the trial judge's charge consisted of a reading of the relevant statute. R.S. 14:14, combined with *1307 language drawn from the McNaughten case concerning defect of reason and disease of the mind. In light of the continuing validity of the McNaughten rule in Louisiana, State v. Berry, 324 So.2d 822 (La.1976), it is clear that the trial judge correctly charged the jury on this issue.
This assignment lacks merit.

Assignment of Error No. 12
In this assignment of error the defense argues that the trial court's charge concerning the relinquishment of anything of value was erroneous and prejudicial.
In its general charge, the trial court addressed the issue whether sexual relations constituted anything of value within the meaning of the aggravated kidnapping statute. In this context, the court stated:
"It's further the law of this state that the forcing of a woman through threats to have sexual intercourse with the accused or to perform a sexual act in the presence of the accused for his own sexual gratification is an act that falls within the statute defining extortion as the communication of threats to another with the intent thereby to obtain anything of value or any acquittance, advantage, or immunity. Those words in the extortion statute are almost the same words that appear in the aggravated kidnapping statute. It is the law applicable to this case because the official comments under the aggravated kidnapping statute refer to it as cases where there is a forcible carrying of a person from one place to another and such kidnapping is done for the purpose of ransom with the intent to extort. Our Supreme Court has defined the words, (sic) extortion, in the manner that I have just read to you."
The defense contends for the first time in brief that the proper definition of the phrase "anything of apparent present or prospective value" in the aggravated kidnapping statute is the general definition of "anything of value" provided in R.S. 14:2(2):
"`Anything of value' must be given the broadest possible construction, including any conceivable thing of the slightest value, movable or immovable, corporeal or incorporeal, public or private, and including transportation, telephone and telegraph services, or any other service available for hire. It must be construed in the broad popular sense of the phrase, not necessarily as synonymous with the traditional legal term `property.' In all cases involving shoplifting the term `value' is the actual retail price of the property at the time of the offense."
This court has repeatedly held that a jury charge must be considered as a whole, and has declined to reverse a conviction on the ground of an erroneous instruction unless the disputed portion, when viewed in light of the entire charge, is erroneous and prejudicial. State v. Dardar, 353 So.2d 713 (La. 1977); State v. George, 346 So.2d 694 (La. 1977). Here the trial judge did not misstate the law when he informed the jurors that sexual relations were considered something of value for purposes of the extortion statute, R.S. 14:66; see State v. Felton, 339 So.2d 797 (La.1976), and was correct in stating that the terms used in the extortion statute are similar to those in the statute defining aggravated kidnapping. Although it would have been preferable to have read the general definition of "anything of value" as provided in R.S. 14:2(2), it should be noted that the general definition is extremely broad and would appear to cover the situation before the court. Therefore, we conclude that the defendant was not prejudiced by the trial court's failure to read this definition.
This assignment of error lacks merit.
For the reasons assigned, the conviction and sentence of James Michael Dupre are affirmed.
NOTES
[1] The defense objected to the references to the aggravated rape in the state's prospective opening statement (Assignment of Error No. 2) and in the state's opening statement (Assignment of Error No. 3). Assignment No. 7 was taken when evidence of the aggravated rape was introduced.
[2] The state's theory was similar for the second countthat the defendant would have raped the teenagers if the girls had not escaped at the convenience store.